1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DONNA F. SILVERMAN,

                Plaintiff,

        v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

             Defendant.

Case No. CV 16-6232 JC

MEMORANDUM OPINION

## I.    SUMMARY

      On August 19, 2016, Donna F. Silverman ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

      This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 25, 2016 Case Management Order ¶ 5.

---

      [1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is hereby substituted for Commissioner Carolyn W. Colvin as the defendant in this action.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 3, 2012, plaintiff filed an application for Disability Insurance Benefits alleging disability beginning on June 1, 2009, due to reflex sympathetic dystrophy, lumbar spine problems, back pain, depression caused by constant pain, limits on concentration, and right foot pain/weak leg.  (Administrative Record ("AR") 15, 169, 184).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on February 12, 2015.  (AR 31-69).

On February 27, 2015, the ALJ determined that plaintiff was not disabled through December 31, 2014 (*i.e.*, the "date last insured").  (AR 15-24). Specifically, the ALJ found that through the date last insured:  (1) plaintiff suffered from the following severe combination of impairments:  a history of left humerus fracture, lumbar radiculopathy, a history of right ankle fracture (status post surgery), and reflex sympathetic dystrophy ("RSD") of the right foot (AR 18); (2) plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 19-20); (3) plaintiff essentially retained the residual functional capacity to perform a range of sedentary work (20 C.F.R. § 404.1567(a)) with additional limitations[2] (AR 20); (4) plaintiff was

---

[2]The ALJ determined plaintiff could (i) lift and carry up to ten pounds occasionally and less than ten pounds frequently; (ii) stand less than two hours, walk less than two hours, and sit eight hours cumulatively in an eight-hour day; (iii) sit thirty minutes at one time with momentary change of position to standing or walking and resumption of sitting thereafter; (iv) occasionally balance, stoop, kneel, crouch, and crawl; (v) never climb ladders, scaffolds, or ropes; (vi) never work at unprotected heights, around dangerous moving machinery, or in extreme cold or heat; and (vii) not operate a motor vehicle with use of foot controls.  (AR 20).

1   capable of performing past relevant work as a Chief Computer Programmer (AR
2   23-24); and (5) plaintiff's statements regarding the intensity, persistence, and
3   limiting effects of subjective symptoms were not entirely credible (AR 23).

4         On June 23, 2016, the Appeals Council denied plaintiff's application for
5   review. (AR 1).

6   **III.   APPLICABLE LEGAL STANDARDS**

7         **A.   Sequential Evaluation Process**

8         To qualify for disability benefits, a claimant must show that the claimant is
9   unable "to engage in any substantial gainful activity by reason of any medically
10  determinable physical or mental impairment which can be expected to result in
11  death or which has lasted or can be expected to last for a continuous period of not
12  less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)
13  (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The
14  impairment must render the claimant incapable of performing the work the
15  claimant previously performed and incapable of performing any other substantial
16  gainful employment that exists in the national economy. Tackett v. Apfel, 180
17  F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

18        In assessing whether a claimant is disabled, an ALJ is required to use the
19  following five-step sequential evaluation process:

20       (1)    Is the claimant presently engaged in substantial gainful activity? If
21              so, the claimant is not disabled. If not, proceed to step two.

22       (2)    Is the claimant's alleged impairment sufficiently severe to limit
23              the claimant's ability to work? If not, the claimant is not
24              disabled. If so, proceed to step three.

25       (3)    Does the claimant's impairment, or combination of
26              impairments, meet or equal an impairment listed in 20 C.F.R.
27              Part 404, Subpart P, Appendix 1? If so, the claimant is
28              disabled. If not, proceed to step four.

3

(4)     Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. § 404.1520(a)(4) (explaining five-step sequential evaluation process).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

## B.     Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  The standard of review in Social Security cases is "highly deferential."  Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both

1   evidence that supports and evidence that detracts from the [Commissioner's]

2   conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)

3   (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

4        While an ALJ's decision need not discuss every piece of evidence or be

5   drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning

6   with sufficient specificity and clarity to "allow[] for meaningful review." Brown-

7   Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal

8   quotation marks omitted); Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012)

9   (citation and quotation marks omitted).

10       An ALJ's decision to deny benefits must be upheld if the evidence could

11  reasonably support either affirming or reversing the decision. Robbins, 466 F.3d

12  at 882 (citing Flaten, 44 F.3d at 1457).  Even when an ALJ's decision contains

13  error, it must be affirmed if the error was harmless. Treichler v. Commissioner of

14  Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014).  The

15  claimant has the burden to establish that an ALJ's error was not harmless. See

16  Molina, 674 F.3d at 1111 (citing Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

17  An ALJ's error is generally harmless if (1) it was inconsequential to the ultimate

18  nondisability determination; or (2) despite the error, the ALJ's path may

19  reasonably be discerned, even if the ALJ's decision was drafted with less than

20  ideal clarity. Id. (citation and quotation marks omitted).

21  **IV.    DISCUSSION**

22       **A.    The ALJ Properly Evaluated the Medical Opinion Evidence**

23       Plaintiff contends that a remand or reversal is warranted because the ALJ

24  failed properly to evaluate the treating and/or examining medical opinions.

25  (Plaintiff's Motion at 2-5).  The Court disagrees.

26            **1.    Pertinent Law**

27       In Social Security cases, the amount of weight given to medical opinions

28  generally varies depending on the type of medical professional who provided the

1  opinions, such as "treating physicians" and "examining physicians."  20 C.F.R.

2  §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); Garrison v. Colvin, 759 F.3d

3  995, 1012 (9th Cir. 2014) (citation and quotation marks omitted).  A treating

4  physician's opinion is generally given the most weight, and may be "controlling"

5  if it is "well-supported by medically acceptable clinical and laboratory diagnostic

6  techniques and is not inconsistent with the other substantial evidence in [the

7  claimant's] case record[.]"  20 C.F.R. § 404.1527(c)(2); Orn v. Astrue, 495 F.3d

8  625, 631 (9th Cir. 2007) (citations and quotation marks omitted).  In turn, an

9  examining, but non-treating physician's opinion is entitled to less weight than a

10  treating physician's, but more weight than a nonexamining physician's opinion.

11  Garrison, 759 F.3d at 1012 (citation omitted).

12      A treating physician's opinion, however, is not necessarily conclusive as

13  to either a physical condition or the ultimate issue of disability.  Magallanes v.

14  Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  An ALJ may reject

15  the uncontroverted opinion of a treating physician by providing "clear and

16  convincing reasons that are supported by substantial evidence" for doing so.

17  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

18  Where a treating physician's opinion is contradicted by another doctor's opinion,

19  an ALJ may reject such opinion only "by providing specific and legitimate reasons

20  that are supported by substantial evidence."  Garrison, 759 F.3d at 1012 (citation

21  and footnote omitted).

22      An ALJ may provide "substantial evidence" for rejecting a medical opinion

23  by "setting out a detailed and thorough summary of the facts and conflicting

24  clinical evidence, stating his [or her] interpretation thereof, and making findings."

25  Garrison, 759 F.3d at 1012 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th

26  Cir. 1998)) (quotation marks omitted).  An ALJ must provide more than mere

27  "conclusions" or "broad and vague" reasons for rejecting a treating physician's

28  opinion.  Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v.

1  Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted).  "[The ALJ] must
2  set forth his [or her] own interpretations and explain why they, rather than the
3  [physician's], are correct."  Embrey, 849 F.2d at 421-22.

4              **2.    Analysis**

5       Here, plaintiff claims that the ALJ failed properly to consider the opinions
6  of plaintiff's treating physicians at Via Verde Medical Group (Plaintiff's Motion
7  at 2-5), specifically a Physical Residual Functional Capacity Questionnaire ("Via
8  Verde PRFC") in which an unspecified Via Verde provider opined that plaintiff
9  was more limited in certain areas of functioning than the ALJ assessed in the
10 decision, specifically, plaintiff (i) would "frequently" have pain or other symptoms
11 that were "severe enough to interfere with attention and concentration needed to
12 perform even simple work tasks"; (ii) was only "[c]apable of low stress jobs";
13 (iii) could lift and carry 10 pounds only "occasionally"; (iv) could only
14 "frequently" look down, turn head right or left, look up, and hold head in static
15 position; (v) could twist only "frequently," "never" crouch/squat, and "rarely"
16 climb stairs (collectively "Via Verde Opinions").  (AR 823-27).  A remand or
17 reversal on this basis is not required here.

18      First, the ALJ was not, as plaintiff suggests, required to provide a detailed
19 explanation of the weight given to each specific finding in the Via Verde PRFC
20 that he did not reject and that were merely consistent with the ALJ's residual
21 functional capacity assessment.  See Howard v. Barnhart, 341 F.3d 1006, 1012
22 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ
23 does not need to 'discuss every piece of evidence.'") (citations omitted); Israel v.
24 Astrue, 494 Fed. Appx. 794, 797 (9th Cir. 2012) ("[T]he ALJ must consider all of
25 the evidence, but need not comment specifically on each element of each piece of
26 evidence."); cf. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ
27 "need not discuss all evidence presented . . . [but instead] must explain why
28 'significant probative evidence has been rejected'") (citation omitted); see

1   generally <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to

2   cite specific evidence does not indicate that such evidence was not considered[.]").

3   Here, the ALJ explicitly noted that the Via Verde PRFC was "consistent" with the

4   ALJ's residual functional capacity assessment to the extent it "found the [plaintiff]

5   could sit for six hours in an eight-hour workday, and stand/walk about two hours

6   in an eight-hour workday, as well as occasionally lift up to ten pounds."  (AR 22)

7   (citing Ex. 26F at 2-3 [AR 824-25]).

8        Second, as the ALJ noted, the Via Verde Opinions were provided in a

9   check-the-box format that did not explain the basis for checking any particular box

10  or identify specific objective medical findings (*i.e.*, results of clinical testing or

11  physical examination) which supported the significant limitations for plaintiff

12  noted in the Via Verde Opinions.  (AR 823-26).  The ALJ properly rejected the

13  Via Verde Opinions on this basis alone.  <u>See, e.g.</u>, <u>Crane v. Shalala</u>, 76 F.3d 251,

14  253 (9th Cir. 1996) ("ALJ [] permissibly rejected [psychological / medical

15  evaluations] because they were check-off reports that did not contain any

16  explanation of the bases of their conclusions."); <u>De Guzman v. Astrue</u>, 343 Fed.

17  Appx. 201, 209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports that d[o]

18  not contain any explanation of the bases of their conclusions.'") (citing <u>id.</u>); <u>Ogin</u>

19  <u>v. Colvin</u>, 608 Fed. Appx. 519, 519-20 (9th Cir. 2015) (ALJ properly discounted

20  treating physician's opinions that "were expressed as 'standardized, check-the-box

21  form[s]' . . . that provided no 'supporting reasoning or clinical findings.'")

22  (quoting <u>Molina</u>, 674 F.3d at 1111); <u>see also</u> <u>Holohan v. Massanari</u>, 246 F.3d

23  1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that

24  are explained than to those that are not. . . .") (citation omitted).

25       Third, the ALJ also properly rejected the Via Verde Opinions because, as

26  the ALJ noted (AR 22), they were not supported by the Via Verde treatment notes

27  for plaintiff.  <u>See</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ

28  properly rejected treating physician's opinion where "treatment notes provide[d]

1  no basis for the functional restrictions [physician] opined should be imposed on

2  [claimant]"); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)

3  ("The ALJ need not accept the opinion of any physician, including a treating

4  physician, if that opinion is brief, conclusory, and inadequately supported by

5  clinical findings."). For example, as the ALJ's decision suggests, Via Verde

6  treatment records for plaintiff document few, if any, reports that plaintiff's

7  impairments interfered in any significant way with plaintiff's attention or

8  concentration or ability to handle stress. (AR 22, 686-733). The Via Verde PRFC

9  did note that plaintiff had been treated with Neurontin[3] and that side effects

10  included "drowsiness" and "[decreased] concentration." (AR 823). Plaintiff

11  points to nothing in the Via Verde treatment records (and the Court finds none),

12  however, which specifically documents that plaintiff experienced either of these

13  side effects, much less plausibly supports the significant limitations in attention,

14  concentration, and/or ability to tolerate stress noted in the Via Verde Opinions.

15  Moreover, although the record does reflect that plaintiff was treated with

16  gabapentin on a consistent basis, Via Verde treatment records affirmatively

17  document few, if any, side effects plaintiff suffered while taking that medication.

18  (See AR 687, 691, 693, 697, 699, 702, 705, 714, 716, 717). In fact, the Via Verde

19  medical records suggest quite the opposite. (See, e.g., AR 698 [8/13/12 Office

20  Visit note that plaintiff stopped taking Zoloft anti-depressant, and was "doing

21  better off of it" with "no current depression"]; AR 714, 716 [9/12/12 reevaluation

22  record recommending possible increase in dosage of gabapentin because

23  "[plaintiff] describes no major side effects and [plaintiff was] having some benefit

24  from [the gabapentin]"]; AR 717 [6/14/12 treatment record noting, in part, that

25  plaintiff was taking gabapentin, and indicating "[no] [t]hinking or memory

26  disturbance" under review of symptoms]). In addition, Via Verde medical records

27

28  _____

  [3]Neurontin is a name brand of gabapentin. See Neurontin, Drugs.com web site, available
  at https://www.drugs.com/neurontin.html.

9

do not reflect that plaintiff's medication (or any other symptom) had any impact on plaintiff's ability to tolerate work stress at all, much less to the degree stated in the Via Verde Opinions.  (AR 686-733).

To the extent the ALJ's decision implicitly rejected findings in the Via Verde Opinions that could be interpreted as reflecting physical limitations for plaintiff more restrictive than the ALJ assessed (compare AR 825-26 [Via Verde Opinions that plaintiff could only "occasionally" lift and carry 10 pounds, "frequently" turn head in all directions/hold head still, "frequently" twist, "never" crouch/squat, and "rarely" climb stairs] with AR 20 [ALJ residual functional capacity assessment noting that plaintiff could *frequently* lift/carry 10 pounds and *occasionally* crouch, but with no express limitations on head movement, twisting, or stair climbing]), plaintiff has not shown that any ALJ error was prejudicial.  For example, the ALJ found plaintiff not disabled at step four because plaintiff was capable of performing her past relevant work, which the vocational expert identified as Chief Computer Programmer.  (AR 23-24, 60-61).  According to the Dictionary of Occupational Titles ("DOT"),[4] the job of Chief Computer Programmer only requires exertion of "up to 10 pounds . . . occasionally . . . and/or a negligible amount of force frequently" and does not require crouching, twisting, or stair climbing at all.  See DOT § 030.167-010 (Chief, Computer Programmer). Hence, to the extent the ALJ's residual functional capacity assessment failed properly to include potentially more restrictive limitations in lifting, crouching, twisting, or stair climbing as identified in the Via Verde Opinions, any such failure was inconsequential to the ALJ's ultimate nondisability determination.

///

---

[4]The DOT is the Social Security Administration's "'primary source of reliable job information' regarding jobs that exist in the national economy."  Zavalin v. Colvin, 778 F.3d 842, 845-46 (9th Cir. 2015) (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)); see also 20 C.F.R. §§ 404.1566(d)(1), 404.1569.

1    Finally, the ALJ properly rejected the Via Verde Opinions in favor of the

2    conflicting opinions of the consultative examining neurologist, Dr. Nibonth

3    Viravathana, whose residual functional capacity assessment for plaintiff the ALJ

4    mostly adopted.  (AR 791-800).  The opinions of Dr. Viravathana were supported

5    by the physician's independent physical and neurological examinations of plaintiff

6    (AR 792-94), and thus, without more, constituted substantial evidence upon which

7    the ALJ could properly rely to reject the Via Verde Opinions.  See, e.g.,

8    Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's

9    opinion on its own constituted substantial evidence, because it rested on

10   physician's independent examination of claimant) (citations omitted).

11       Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

12   **B.    The ALJ Properly Evaluated Plaintiff's Subjective Symptoms**

13       Plaintiff contends that a remand or reversal is warranted because the ALJ

14   inadequately evaluated the credibility of her subjective complaints.  (Plaintiff's

15   Motion at 5-7).  The Court disagrees.

16   **1.    Pertinent Facts**

17       At the administrative hearing, plaintiff testified, in part (i) "My ability to

18   concentrate [] and remember short term things . . . and learn, I would assume, is

19   greatly diminished[]" (AR 45); (ii) she "can't concentrate long enough" to perform

20   the programming required by her past relevant work (AR 46); (iii) plaintiff

21   believed that her memory and concentration problems were caused by her pain

22   medication (i.e., gabapentin/Neurontin) (AR 45, 53-55); (iv) constant pain in

23   plaintiff's foot/ankle "affects [plaintiff's] concentration" (AR 51-52); (v) it is

24   "very hard for [plaintiff] to sit in a chair for any length of time comfortably" due to

25   her lower back pain, plaintiff  notices pain within "[a]bout 20 minutes" of sitting,

26   and plaintiff "would get up and do some exercises" to alleviate the pain (AR 45-

27   46); (vi) she could stand 15-20 minutes at a time but then needed to move and/or

28   sit down to relieve her pain (AR 46); (vii) that she had a problem "grasping

11

1   things" heavier "than 10 or 15 pounds" (such as lifting her grandson), and did not

2   cook because the "frying pans [were] too heavy" (AR 56-57); and (viii) she could

3   not bend "down and back up again" to reach the bottom drawer of filing cabinets

4   because her ankle "[did not] bend enough" (AR 48).

5                    **2.    Pertinent Law**

6            When determining disability, an ALJ is required to consider a claimant's

7   impairment-related pain and other subjective symptoms at each step of the

8   sequential evaluation process.  20 C.F.R. §§ 404.1529(a) & (d).  Accordingly,

9   when a claimant presents "objective medical evidence of an underlying

10  impairment which might reasonably produce the pain or other symptoms [the

11  claimant] alleged," the ALJ is required to determine the extent to which the

12  claimant's statements regarding the intensity, persistence, and limiting effects of

13  her symptoms ("subjective statements" or "subjective complaints") are consistent

14  with the record evidence as a whole and, consequently, whether any of the

15  individual's symptom-related functional limitations and restrictions are likely to

16  reduce the claimant's capacity to perform work-related activities.  20 C.F.R.

17  §§ 404.1529(a), (c)(4); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029,

18  at *4-*9; SSR 96-7p, 1996 WL 374186, at *1-*5.[5]  When an individual's

19  ────────────────

20         [5]Social Security Rulings reflect the Social Security Administration's ("SSA") official

21  interpretation of pertinent statutes, regulations, and policies.  20 C.F.R. § 402.35(b)(1).  Although
    they "do not carry the 'force of law,'" Social Security Rulings "are binding on all components of

22  the . . . Administration[,]" and are entitled to deference if they are "consistent with the Social
    Security Act and regulations."  20 C.F.R. § 402.35(b)(1); Bray v. Commissioner of Social

23  Security Administration, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks
    omitted); see also Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984) (discussing weight and

24  function of Social Security rulings).  Effective March 28, 2016, the SSA issued SSR 16-3p which

25  superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA
    "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an

26  examination of an individual's [overall character or truthfulness] . . . [and] more closely follow
    [SSA] regulatory language regarding symptom evaluation."  See SSR 16-3p, 2016 WL 1119029,

27  at *1-*2, *10; see also 2016 WL 1237954, *1 (correcting SSR 16-3p effective date to read March

28                                                                                      (continued...)

                                        12

subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities.  See SSR 16-3p, 2016 WL 1119029, at *7-*8; SSR 96-7p, 1996 WL 374186, at *1-*3.  In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89.[6]

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

### 3.    Analysis

Preliminarily, it appears that the ALJ's residual functional capacity assessment adequately accounted for any impairment-related *physical* limitation reflected in plaintiff's testimony.  Plaintiff does not persuasively argue otherwise. Hence, currently at issue and addressed below is whether the ALJ properly rejected plaintiff's subjective statements regarding mental limitations related to a medically determinable psychological impairments (*i.e.*, depression and anxiety) and/or side effects from prescription medication, such as problems with

_____

[5](...continued)
28, 2016).  SSR 16-3p became effective after the ALJ issued the decision in the instant case but before the Appeals Council denied review.  Nonetheless, the possible applicability of SSR 16-3p need not be resolved here since the ALJ's evaluation of plaintiff's subjective complaints in this case passes muster whether SSR 16-3p or its predecessor, SSR 96-7p, governs.

[6]It appears to the Court, based upon its research of the origins of the requirement that there be "specific, clear and convincing" reasons to reject or give less weight to an individual's subjective statements absent an affirmative finding of malingering, that such standard of proof remains applicable irrespective of whether SSR 96-7p or SSR 16-3p governs.  See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989), Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984), Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995), and Molina, 674 F.3d at 1112).

1  concentration and memory.  As discussed below, a remand or reversal is not

2  appropriate.

3      First, the ALJ properly gave less weight to plaintiff's subjective statements

4  regarding problems with concentration and/or memory based on plaintiff's

5  apparent failure to seek a course of treatment that was consistent with the alleged

6  level of severity of her mental limitations.  See Molina, 674 F.3d at 1113 (ALJ

7  may properly consider "unexplained or inadequately explained failure to seek

8  treatment or to follow a prescribed course of treatment" when evaluating

9  claimant's subjective complaints) (citations and internal quotation marks omitted);

10  SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective

11  statements where "the frequency or extent of the treatment sought by an individual

12  is not comparable with the degree of the individual's subjective complaints. . . .");

13  SSR 96-7p, 1996 WL 374186, *7 (same).  As the ALJ noted, there is no evidence

14  in the record of psychiatric hospitalizations or treatment for acute psychological or

15  psychiatric illness.  (AR 23).  Substantial evidence supports the ALJ's findings.

16  For one example, as the ALJ suggested, the August 4, 2014 report from the

17  consultative examining psychologist noted, in pertinent part, that plaintiff stated

18  "she has never been psychiatrically hospitalized, is not seeing a psychiatrist, and is

19  not taking any psychiatric medications."  (AR 18, 803).

20      Second, the ALJ properly gave less weight to plaintiff's subjective

21  complaints due to inconsistencies in plaintiff's own statements about the severity

22  of her psychological symptoms.  See Light v. Social Security Administration, 119

23  F.3d 789, 792 (9th Cir. 1997) (in weighing plaintiff testimony, ALJ may consider

24  "inconsistencies either in [plaintiff's] testimony or between his testimony and his

25  conduct").  For example, plaintiff essentially testified that her ability to

26  concentrate and her memory were "greatly diminished[]" because she used

27  gabapentin.  (AR 45).  As the ALJ noted, however, the medical record as a whole

28  documents few, if any, instances when plaintiff experienced any medication side

14

1  effects, much less side effects that impacted her concentration and/or memory in

2  any significant way.  (AR 413, 547, 558, 590, 621, 681-82, 687, 691, 693, 697-99,

3  702, 705, 714, 716, 717, 735, 743, 745, 747, 749, 751, 753, 758, 764-65, 773, 774,

4  803).  Indeed, some treatment records from 2012 reflect that while plaintiff had

5  reported experiencing a side effect following a lumber sympathetic nerve block

6  (*i.e.*, headache), plaintiff had not reported "other new issues, complaints, [or]

7  requests" even though she was "tak[ing] gabapentin as prescribed by [her primary

8  care physician.]"  (AR 743, 745) (emphasis added).  In addition, a June 26, 2013

9  treatment record noted that plaintiff was "[t]aking gabapentin" and also noted that

10  on examination plaintiff had "[n]ormal attention span and concentration."  (AR

11  756, 758).

12       Finally, the ALJ properly gave less weight to plaintiff's subjective

13  complaints due, in part, to the absence of objective medical evidence supporting

14  any limitations in concentration and memory.  See Burch, 400 F.3d at 681

15  ("Although lack of medical evidence cannot form the sole basis for discounting

16  pain testimony, it is a factor that the ALJ can consider . . . .");  see also SSR 16-3p,

17  2016 WL 1119029, at *5 ("[ALJ may] not disregard an individual's statements

18  about the intensity, persistence, and limiting effects of symptoms solely because

19  the objective medical evidence does not substantiate the degree of impairment-

20  related symptoms alleged by the individual.");  SSR 96-7p, 1996 WL 374186, at *6

21  (same).  For example, despite testimony that plaintiff's concentration and memory

22  were "greatly diminished" (AR 45, 51-55), as the ALJ noted, the medical evidence

23  reflects that plaintiff's depression was essentially "controlled" with medication.

24  (AR 18;  see AR 704 [1/18/12 office visit record noting "Depression, major, in

25  remission . . . [c]ontrolled" and that treatment plan simply included "[r]efill meds,

26  labs and follow up"]);  see, e.g., Warre v. Commissioner of Social Security

27  Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be

28  controlled effectively with medication are not disabling for the purpose of

15

1    determining eligibility for SSI benefits.") (citations omitted).  As the ALJ also
2    noted, the consultative examining psychologist opined, in pertinent part, that
3    plaintiff "would have no difficulty understanding, remembering and carrying out
4    [even] complex and detailed instructions" with "appropriate" pace, despite
5    plaintiff's mental impairments.  (AR 807-09).  Plaintiff argues that the Via Verde
6    Opinions document more significant mental limitations.  (Plaintiff's Motion at 7).
7    As noted above, however, the ALJ properly rejected the Via Verde Opinions for
8    specific and legitimate reasons based on substantial evidence in the record.  To the
9    extent plaintiff argues that other medical records also reflect greater mental
10   limitations (see Plaintiff's Motion at 7), this Court will not second guess the ALJ's
11   reasonable determination otherwise.

12          Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

13   **V.    CONCLUSION**

14          For the foregoing reasons, the decision of the Commissioner of Social
15   Security is affirmed.

16          LET JUDGMENT BE ENTERED ACCORDINGLY.

17   DATED:  March 22, 2017

18                                    _____/s/_____
19                                    Honorable Jacqueline Chooljian
20                                    UNITED STATES MAGISTRATE JUDGE
21
22
23
24
25
26
27
28

16